365 So.2d 1156 (1978)
James M. BURR
v.
Larry LEGUIN.
No. 6741.
Court of Appeal of Louisiana, Third Circuit.
December 20, 1978.
Writ Refused February 16, 1979.
George C. Murray, Jr., and Nathan M. Calhoun, Vidalia, for plaintiff-appellant.
Lyman S. Gore, Vidalia, for defendant-appellee.
Before DOMENGEAUX, WATSON and GUIDRY, JJ.
*1157 GUIDRY, Judge.
This case comes before us on appeal from a judgment awarding the plaintiff, James M. Burr, d/b/a J. M. Burr Real Estate, the sum of $1200.00 for services rendered in connection with an exclusive listing agreement between plaintiff and defendant, Larry LeGuin.
The record indicates that on October 17, 1977 William A. McDonough, a real estate broker in plaintiff's employ, obtained a written listing agreement from Mr. LeGuin under which the plaintiff would be the exclusive selling agent for the defendant's home for a period of one month from the date of contract. Defendant does not dispute the fact that he executed this agreement. Provision was made in the agreement for the plaintiff to receive a commission if and when the house was sold. On November 11, 1977 the home was sold to Mr. Kenneth Dunn for the sum of $42,500.00. The defendant thereafter refused to pay plaintiff any commission on the sale and this suit followed.
Plaintiff's suit alleges that he is entitled to a commission of $2,850.00, representing 6% of the sum of $47,500.00, the amount which had been stipulated in the agreement to be the "Total Sales Price" of the home. In the alternative, plaintiff prayed for judgment in the sum of $2,550.00, representing 6% of $42,500.00, the actual sales price of the home. Defendant contends that a stipulation in the agreement providing that the "Owner will net $44,000.00 min." brought an end to any obligation he may have had to pay the plaintiff a commission, since he ultimately chose to sell his home for less than this amount.
The trial court concluded that plaintiff was not entitled to the entire amount stipulated in the agreement, and awarded him $1,200.00 for services actually performed, such award being made on the basis of quantum meruit.
Plaintiff has appealed seeking an increase in the award. Defendant did not appeal nor answer the appeal of plaintiff.
We are of the opinion that the written agreement signed by Mr. LeGuin on October 17, 1977 was a binding contract, enforceable for the period stated therein, and accordingly, plaintiff is entitled to judgment based upon the express terms of the contract and the trial court erred in basing plaintiff's recovery on quantum meruit. Barnes v. McDonald, 119 So.2d 169 (La.App. 1960).
The controversy revolves around the interpretation of the terms of the listing agreement entered into between the defendant and plaintiff. Pertinent portions of this agreement provide as follows:

"FINANCE DATA
`Total Sales Price $47,500- . . .

ADDITIONAL INFORMATION
SECTION `E'
Owner will net 44,000 min. . . .
SECTION `F'

I authorize you to accept offer as outlined in the above and enter into a contract of sale of the property on those terms. Should you receive a lesser offer for the property, or an offer of the same amount on different terms, please submit that offer for my consideration or acceptance. For and in consideration of your listing this property for sale in your office and your making a reasonable effort to sell the property, I agree that you shall have the exclusive right to sell the property for a period of 1 month(s) from this date, during which time I shall not list it with anyone else for sale, and I agree to refer to you any offers which may be made direct to me to purchase the property. If and when I receive an acceptable offer to purchase the property, I agree to pay you a commission of 6% . . .

I further agree that should this property be sold by me, by you or any other agent during the existence of this contract, or should it be sold or exchanged within ninety (90) days after termination of this contract to anyone to whom this property has been exhibited, quoted or offered for *1158 sale by you, I agree to pay the stipulated commission as a consideration for your efforts to sell the property. . . ."
We do not construe the above quoted portions of the agreement to mean that Mr. LeGuin could unilaterally determine, during the period of agreement, to accept an offer of sale netting him less than $44,000.00 and thereby effectively terminate the agreement and deprive plaintiff of any commission on the sale. Rather, we interpret these terms to give to the plaintiff the express authority to enter into an agreement to sell the property on the owner's behalf to any prospective buyer willing to pay $47,500.00 provided such price would bring to the owner the sum of $44,000.00 net. However, under the agreement, before the plaintiff could agree to sell the house for a price less than that stipulated the owner would have to be contacted, and the sale at the reduced price would have to be expressly authorized by Mr. LeGuin. There is no dispute that the defendant agreed to the sale at a reduced price or that such sale was executed during the life of the listing agreement.
It was stipulated by both parties at trial that subsequent to the execution of the listing agreement, Mrs. Kenneth Dunn contacted the J. M. Burr Real Estate firm and was told that the LeGuin home was up for sale. Ms. Stutzman, a real estate broker with plaintiff's firm, informed Mrs. Dunn that the selling price of the home was $47,500.00, and then she took Mr. and Mrs. Dunn to view the home in the presence of the defendant.
Mr. McDonough testified at trial that Mr. Dunn made an offer to him to buy the home for $46,000.00, and that he conveyed this offer to the defendant. Mr. LeGuin admitted that he thereafter contacted Mr. Dunn himself and consummated a deal with him for the sale of the house at the price of $42,500.00. There is discrepancy in the testimony adduced at trial as to whether the plaintiff was informed of these negotiations between the Dunns and LeGuin and whether or not he approved of the sale at the reduced price.
The contract between the plaintiff and defendant expressly provided that should Mr. LeGuin himself sell the property during the contract period to anyone to whom it had been exhibited, quoted or offered for sale by the plaintiff, that the plaintiff would be paid the stipulated commission in consideration of his "efforts to sell the property". If Mr. LeGuin chose to accept an offer of less than that which he had originally hoped to receive, then he did so subject to his obligation to compensate the plaintiff for his efforts in selling the property.
In the case of Acadian Inv. Co. v. Laird, 138 So.2d 429 (La.App. 3rd Cir. 1962) this court stated:

". . . When the real estate broker has a contract giving him the exclusive right to sell the property during a specified period of time, he is entitled to a commission upon any sale of the property made during that time, whether the sale be made by the owner personally or by another broker. Donlon v. Babin, La. App., 1 Cir., 44 So.2d 134, and the many cases cited therein . . ." 138 So.2d at 431.

There is no dispute that the property in the instant case was sold during the period which the plaintiff had an exclusive listing on it. Thus we find that under the terms of the listing agreement, plaintiff is entitled to recover 6% of the sales price.
For the above and foregoing reasons the judgment of the trial court is amended to increase the principal amount of the award from $1200.00 to $2550.00. In all other respects the judgment appealed from is affirmed at appellant's costs.
AMENDED AND AFFIRMED.